UNITED STATES *v.* J. D. RICHARDSON Co. (No. 4302) [1]

---

[1] C. A. D. 125.

58

United States Court of Customs and Patent Appeals, May 29, 1940

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes* and *Samuel M. Richardson*, of counsel) for appellee.

[Oral argument April 10, 1940, by Mr. Oliver and Mr. Richardson]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

The Government here appeals from the judgment of the United States Customs Court, First Division, sustaining the protest of appellee seeking recovery of moneys paid as duties assessed and collected by the Collector of Customs at the port of Detroit, Mich., on merchandise described in the invoices as "Wood patterns."

Two protests are involved, the cases having been consolidated for trial. The appraiser's answers to the protests are in identical language and describe the articles as follows:

The merchandise which is the subject of this protest consisted of nine wooden sections of an automobile body. These sections are carved of wood and are made by hand. When put together in their proper position, they form the outer shape of a complete automobile body.

The merchandise was entered October 19, 1936, and the collector classified it under that portion of paragraph 412 of the Tariff Act of 1930 which reads:

PAR. 412. * * * manufactures of wood * * * not specially provided for, 33⅓ per centum ad valorem.

The importer claims the articles to be models properly classifiable under paragraph 1720 of the act and hence entitled to admission duty free. That paragraph reads:

PAR. 1720. Models of inventions and of other improvements in the arts, to be used exclusively as models and incapable of any other use.

Both parties took testimony. The material facts proved are summarized in the decision of the trial court as follows:

The merchandise was made in England by Briggs Motor Bodies, Ltd., and consists of panels or sections made of wood to the exact exterior shape of various parts of an automobile body, such as cowl, fenders, top, etc. The imported merchandise is produced in the following manner: Men trained in the art of designing automobiles sketch designs for automobile bodies to be made in the future. These designs are given to engineers who reduce them to engineering drawings. From these drawing so-called panels such as those at bar are produced in full size, mostly in mahogany, under the direction and with the collaboration of the engineers who made the drawings, and represent, when completed, the exterior shape of the part of the automobile body to be finally produced. After importation a blueprint is made from wooden sections such as those in issue. A pattern is then made for use in a mold and a casting is made from the pattern. The casting is placed in a machine known as a Keller machine and one of the original sections here in issue is placed in another part of the same machine. An automatic arm that passes over the wooden section guides a grinding apparatus in the machine which shapes the surface of the casting so that in every respect it conforms to the surface of the wooden section. The casting is finally finished by hand in order to grind off imperfections and is, thereafter, used as a die from which parts of automobile bodies may be stamped out on sheet metal.

We may add to the foregoing that the weight of the evidence is to the effect that the imported articles are not, as imported, suitable for use as patterns for the making of dies. As we understand the testimony, it is to the effect that the patterns are embedded in sand to form molds and the molten metal used in making dies is poured into the molds. In the process of cooling, the metal die shapes shrink. Those skilled in the art know the proper space to be allowed for the shrinkage of different metals in making different sized dies. So when the patterns are fashioned from the imported articles their dimensions are greater than that of the articles themselves. There was some

testimony on the part of the one witness called by the Government to the effect that he had seen articles like those involved used as patterns but when so used he stated that some kind of material was applied to them to extend their dimensions.

The record discloses that after the articles had served the purpose for which imported, they were shipped back to England.

After its summary of facts above quoted the trial court continued:

In Funk and Wagnalls New Standard Dictionary, the following definition is given of the word "model"—

An object, usually in miniature, representing accurately something to be made or already existing: *a material pattern of natural size* * * *. [Italics ours.] and the word "pattern" is defined as—

1. An original or model proposed for imitation; *. * * 2. Anything shaped or formed to serve as a model or guide in forming something else. * * *

Obviously the merchandise at bar falls squarely within the common meaning of the word "model."

We are, therefore, satisfied that the merchandise at bar consists of models from which parts of automobile bodies are ultimately to be made and we are likewise satisfied from the evidence that they are models of improvements in the industrial art, i. e., the building of automobile bodies of advanced design, and that they have and are capable of no other use.

It seems to be the position of the Government that the involved articles which it refers to as "panels" are not models but patterns. As point 1 the brief asserts that they "do not come within the common meaning of the term 'model,' " it being said that the definition quoted by the court "is too broad in its application and includes as a synonym the term 'pattern.' "

Certain definitions of "model" and "pattern" given by Knight's Mechanical Dictionary are quoted as follows:

Model. 1. A pattern, usually on a diminutive scale, of a work which has been or is to be done.

Working-models are diminutive machines, with all the parts capable of performing work on a scale proportioned to their size.

Pattern. 1. A piece of card-board, sheet-metal, or thin plank corresponding in outline to an object that is to be fabricated, and serving as a guide for determining its exact shape and dimensions; such are employed by workers in leather, textile fabrics, and other thin materials for cutting out work, and also by wood-workers for laying off the outlines of objects of irregular form which are afterward shaped by the axe or saw. (See Template.) Pattern-pieces or *gages* are largely used in making special machinery, such as rifles, sewing-machines, American watches, and numerous machines in which all the parts are made separately by gages and then *assembled.*

  *    *    *    *    *    *    *

3. (Founding.) The counterpart of a casting in wood or metal from which the mold in the sand is made. When dry-sand or loam-cores are used to form the cavities in a casting, projections of suitable size and shape are affixed to the pattern to secure such cores in place. (See Print.)

Patterns are often made in two parts, sometimes in several parts, held together by steady-pins or dowels.

Straight-grained pine or mahogany is preferred for patterns of this kind; screws rather than nails are employed for joining the pieces. * * *

The brief further asserts that the use of the articles "on the Keller duplicator machine is as patterns and not models."

As its second point, the brief argues that the articles are not models of an improvement in the arts, but rather are improvements in science or industry, and as a third point it is contended that the legislative and judicial history of paragraph 1720, *supra*, shows that Congress did not contemplate that articles such as those involved should be classified as models of improvements in the arts.

We think attention properly may be given first to the material parts of the legislative and judicial history to which the Government calls attention.

Paragraph 616 of the 1897 tariff act read:

Models of inventions and of other improvements in the arts, including patterns for machinery, but no article shall be deemed a model or pattern which can be fitted for use otherwise.

If the foregoing were the law applicable to this case it would seem that the articles involved would fall within its terms, whether regarded as models or as patterns, but in the 1909 tariff act the language was changed and a paragraph (629) was adopted which has been continued in the same language in all subsequent acts, including that of 1930. See paragraph 1720, *supra*.

It will be observed that patterns were dropped from the paragraph and the clause "to be used exclusively as models and incapable of any other use" was substituted for the language of paragraph 616 of the 1897 act, "no article shall be deemed a model or pattern which can be fitted for use otherwise."

In the case of *United States* v. *American Brown Boveri Electric Corporation*, 17 C. C. P. A. (Customs) 329, T. D. 43776, where it was held that there was enough doubt and ambiguity about paragraph 1620 of the 1922 tariff act (prototype of paragraph 1720, *supra*), to justify recourse to the legislative history as an aid to construction, this court referred to the familiar rule that a change in language ordinarily imparts a change in meaning. The rule is applicable here, of course, and if the articles involved are, in fact, patterns we should have no hesitation in holding that paragraph 1720, *supra*, does not cover them, although we agree with the trial court that they "fall squarely" within the dictionary definitions quoted by it as they do within the definitions quoted from Knight's Mechanical Dictionary, *supra*.

So, the primary question is, are the articles in fact patterns? As has been indicated, the great weight of the testimony is that they are not used as patterns. Indeed, there is no testimony that they are so used in their condition as imported. The testimony of the single witness called by the Government relating to this point, as has been stated, is to the effect that he had seen similar articles used

as patterns after other material had been added to increase their dimensions. Upon the record here presented we do not think they properly may be held to be patterns.

In this connection we quote the following from the Government brief:

A pattern is usually made from a model and is the full size design or form with or from which the completed article is made, either in whole or in part. A model, usually made to scale, may be measured, photographed, studied and copied, but a pattern is used in the actual manufacture of the finished article. In other words, a pattern may be, and frequently is made from a model and the completed article or thing contemplated is in turn made from the pattern or a series of patterns. For example, a model of an automobile body would be presumably in miniature, a completed body, exact to scale, showing in every detail how the completed article would look as to design, shape, style, etc. From such a model the necessary patterns would be made, from which patterns, such as the panels at bar, the actual full sized sections would be manufactured to produce the completed steel automobile body, the pattern serving as a guide for determining the exact shape and dimensions of the completed article.

It is shown here that patterns are made from the articles involved, and the fact that the articles are not in miniature is not deemed material.

The Government argues that the articles are not models of an improvement in the arts but rather improvements in science or industry; that the mass production made possible by the invention of new machinery cannot be attributed to an artistic development but rather to a scientific one, and that "even if we stretch our imagination and concede for the moment that automobile body-building is an industrial art, there is no testimony in this record that the wooden panels are an improvement in that art."

With respect to the argument that the articles are not models of an improvement in the arts, it seems to us that the Government seeks to have the word "arts" given too limited a construction. The statute reads, "Models of *inventions* and of *other* improvements in the arts * * *." [Italics ours.] Obviously, models of inventions are not confined to inventions relating to art in the narrow sense of that word. One definition of art given by Webster's New International Dictionary is—

6. Systematic application of knowledge or skill in effecting a desired result. Also, an occupation or business requiring such knowledge or skill; a craft; as, mechanical or industrial *arts*.

and quotes from Addison:

The fishermen can't employ their *art* with so much success in so troubled a sea.

There are innumerable improvements which do not constitute invention. We think Congress took note of this and that it was not intended to limit models of such *other improvements* to any greater degree than "models of inventions" are limited.

With respect to the statement relating to lack of evidence upon the point of improvement, it may be said that the purport of certain testimony given by appellee's witness, Vincent J. Graf, is that the articles do "illustrate an improvement in the art of automobile body building," but we attach little importance to such testimony. It is in evidence (and were it not in evidence we think we might take judicial notice as a matter of common knowledge), that new designs for automobile bodies are being constantly developed—the witness Graf said, "Annually." In the very nature of things the question of whether new designs in automobile bodies are improvements over old designs is ordinarily a matter of individual opinion and taste. It would be impossible, in our opinion, for any court arbitrarily to fix a standard by which the question of improvement might fairly be determined.

It is also urged by the Government that the use of the articles on the Keller duplicator machine is as patterns and not as models. We do not agree that the use of them in that respect is inconsistent with the idea that they are models or that it serves to place them in the class of patterns, they being primarily models from which patterns were made. Before the introduction of the Keller machine articles like those involved were imported and used for making die patterns and it was the practice to fashion the die by hand work, the workmen observing the models and fashioning the dies from such observation. We think they were models then in the sense of the statute, and we do not think that the fact that they now are placed upon a machine and the dies mechanically fashioned from them changes their inherent character.

We are of the opinion that the importer *prima facie* sustained the burden of overcoming the presumption of correctness attaching to the collector's classification.

The judgment of the United States Customs Court is *affirmed*.